IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.     04-cv-01673-REB-OES)

STEVE WALKER,

Plaintiff(s),

vs.

LORI POLLOCK and
LANI POLLOCK,

Defendant(s).

ORDER GRANTING DEFENDANTS'
MOTIONS TO COMPEL AND FOR SANCTIONS
AND
ORDER DENYING PLAINTIFF'S
MOTION TO COMPEL

ORDER ENTERED BY MAGISTRATE JUDGE O. EDWARD SCHLATTER
Dated:  October 14, 2005

Defendants have filed a motion to compel accompanied by a motion for sanctions.  The motion to compel seeks the production of documents, and the motion for sanctions asks for sanctions against plaintiff for his failure to provide the documents in timely fashion.

I conducted a hearing on defendants' motion on September 28, 2005.  During the hearing, counsel for defendants, Charles Burg, stated that the document requests fall generally into two groups: (1) documents or materials that are related to advertisements that plaintiff may have issued in regard to the Missouri Heights Ranch property, or contacts he may have had with prospective buyers; and (2) documents that are related to plaintiff's efforts to remediate a mold problem at this property.

For sanctions, defendants seek in regard to the first area an order "refusing to allow the Plaintiff to support a claim [or admit evidence in regard to the claim ]that the Notice of Lis Pendens played a substantial part in causing al prospective buyer to decline to close on a recent contract for the purchase of the Missouri Heights Ranch property;" and in regard to the second area, defendants seek an order "refusing to allow the Plaintiff to support a claim [or admit evidence in regard to the claim] that the Notice of Lis Pendens adversely affects the willingness of the Roaring fork Real Estate Broker community to show the Missouri Heights Ranch property and obtain contacts for its sale."  *See* Defts' Mtn for Sanctions at 5.

During the hearing, plaintiff's counsel, George Allen, responded to the claims that defendants made in regard to the above two classes of discovery requests.  In regard to the offering materials, he stated that he had been informed by plaintiff that plaintiff had "given to defendants all that he can find."  For example, plaintiff had informed Mr. Allen that he thought that he possessed "showing records" and copies of advertising brochures in regard to the property, but his search "came up dry."  In regard to the mold problem, and his efforts to remediate the problem, plaintiff acknowledged that although he had spent some $20,000 to address the mold problem, he had no records describing the problem, or of his efforts to cure it.

Although admitting that plaintiff had failed to provide any materials in response to these two classes of requests, Mr. Allen argued that I should not grant the particular sanctions sought by defendants because they would be dispositive in nature.  In his view, the request for sanctions is the functional equivalent of a motion to dismiss.  He

argues that the sanction to be imposed, at worst, should consist of a prohibition against the use by plaintiff of any relevant materials that plaintiff may locate between now and the date of trial. Pltf's Resp. at 3.

Plaintiff has filed his own Motion to Compel the production of materials from defendants. In his motion, plaintiff asks me to order that plaintiffs produce copies of all of their e-mails between themselves, and between themselves and certain other listed parties, including two lawyers and the members of one lawyer's family. Defendants have opposed these requests, arguing that the requests are overly broad in scope, overly burdensome and possibly an invasion of materials that are protected by the attorney-client privilege.

During the hearing, suggestions were made that I issue an order that directs defendants to conduct a more narrowly-constructed word search of the defendants e-mails. Defendants argued that if I were to consider such a word search, I should limit the words to "lis pendens," "Walker," and "Missouri Heights." Plaintiff argued for a broader search.

## DISCUSSION

### A

I agree with defendants that plaintiff has failed to produce documents that would be responsive to the two subject discovery requests. The documents or materials were prepared, compiled or received by plaintiff during the period that he was in litigation of some kind with defendants. For that reason, he was under a duty to preserve such

records in the event they would be needed by defendants. His failure to preserve any materials in regard to his efforts to sell the Missouri Heights property, and in regard to the mold problem, warrants the imposition of a sanction.

However, I agree with plaintiff that the particular sanctions sought by defendants are the functional equivalent of a dismissal. I conclude that a dispositive-type of sanction is not warranted in the circumstances presented here. But contrary to plaintiff's view, I disagree that a mere bar on plaintiff's use of subsequently-located materials is the appropriate sanction to impose. That would be little more than the natural result of any party's failure to produce discovery materials within the discovery deadlines, and is not a sanction as such.

**B**

In my opinion in Gates v. Bando, I explored in detail the subject of spoliation of evidence, and the tests for determining whether sanctions are appropriate for spoliation, whether dispositive or not. 167 F.R.D. 90 (D.Colo. 1996). I need not repeat here all that I discussed in that opinion other than to touch upon the primary points.

Sanctions for spoliation are appropriate when a party "'(1) destroys (2) discoverable matter (3) which the party knew or should have known (4) was relevant to pending, imminent, or reasonably foreseeable litigation.'" Id. at 101, *quoting* J. Gorelick et al., Destruction of Evidence, § 3.8, p. 88 (Wiley 1989). In the Tenth Circuit, before sanctions may be imposed, particularly sanctions of a dispositive nature, courts are directed to consider the following factors:

> (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant," [and] (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance.

Ehrenhaus v. Reynolds, 965 F.2d 916, 920 (10th Cir. 1992). Additionally, courts should consider and discuss a fifth factor, the efficacy of lesser sanctions. Id. The five listed factors do not constitute a rigid test. Id. Determination of the correct sanction for a discovery violation is a fact-specific inquiry that is essentially a judgment call, and is reviewed pursuant to an abuse of discretion standard. Gates v. Bando at 102.

The two factors that are of primary importance in this list of five factors are those that relate to the culpabililty of the offender – that is, willfulness or bad faith – and the degree of prejudice or harm which resulted from the actions of the offender. Id. "The cases generally are unanimous in declaring that a dispositive sanction may be imposed only when the failure to comply with discovery demands is the result of willfulness, bad faith, or some fault of a party other than inability to comply." Id. at 103. In weighing the factor of prejudice, judges should consider "the materiality and value of the suppressed evidence upon the ability of a victim to fully and fairly prepare for trial." Id. at 104. The imposition of dispositive sanctions should be confined to the flagrant case in which a party has demonstrated that the failure to produce "materially affects the substantial rights of the adverse party, and is prejudicial to the presentation of his case." Id., *quoting* Wilson v. Volkswagen of America, Inc., 561 F.2d 494, 503 (4th Cir. 1977), *cert denied*, 434 U.S. 1020 (1978), internal quotations omitted. Before any sanctions would

5

be appropriate, a judge must at least be satisfied that the lost materials had, or would have had, some relevance and materiality to the proceedings. Id. at 105.

In order to determine the appropriateness of any sanction, whether dispositive or otherwise, judges need to balance the degree of misconduct evidenced by a party's mental state against the degree of harm which flows from the misconduct. Having considered the remarks and arguments of counsel, I see no evidence from which I may conclude that plaintiff's failure to produce the materials at issue here was the result of any willfulness or bad faith on his part. Nevertheless:

> [w]here a judge finds no willfulness, bad faith or fault, there exists beneath these states of mind a broad panoply of unintentional conduct: recklessness, gross negligence, negligence, carelessness, inadvertence or accident. The discretion to impose sanctions for reckless or negligent misconduct is as broad as the discretion which is accorded for imposition of sanctions where the misconduct was deliberate and intentional.

Id. at 103.

## C

In the circumstances presented here, plaintiff knew that he was in a huge legal squabble with defendants, and knew that the ability to sell the Missouri Heights property was one of the central issues. Plaintiff also knew, or as a real estate agent certainly should have known, that a $20,000 mold problem in a property arguably could influence a buyer in the decision to purchase the property. For that reason, I conclude that plaintiff was grossly negligent in failing to maintain and preserve copies of the

6

materials that are the subject of the two classes of discovery requests.

At this stage, I am unable to weigh or evaluate the prejudice that has resulted to defendants as a result of plaintiff's failure to produce the materials. Defendants themselves only alluded to prejudice in their motion and reply. Nowhere, however, did defendants assert that as a result of their inability to review these documents their ability to prepare or defend against plaintiff's claims has been prejudiced, or to what degree. I conclude that the potential for prejudice to defendants' ability to defend against plaintiff's claims is apparent from the nature of the factual and legal issues that continue to drive this lawsuit

In view of the facts that plaintiff was grossly negligent in failing to preserve the subject materials, and in view of the apparent prejudice to defendants as a result of his failure, I find that sanctions in two forms are appropriate. First, as a penalty for his failure to preserve obvious discovery materials, I will order that plaintiff's Motion to Compel the production of defendants' e-mails be denied. Even if I did not deny the motion for that reason, I note that plaintiff's request for e-mails, in fact, is overly broad and burdensome, and seeks e-mails that have highly questionable relevance to the issues in this case. Additionally, because of the nearness of the date for trial, November 14, 2005, I am not persuaded that I should impose upon plaintiffs the burdens of searching and producing e-mails at this stage.

Second, I will *recommend* to District Judge Robert E. Blackburn that he give a "negative inference instruction" that is based upon the following form of instruction:

> If a party fails to produce evidence which is under his control and reasonably available to him and not reasonably available to the adverse party, then you may infer that the evidence is unfavorable to the party who could have produced it and did not.

*See*, Lewy v. Remington Arms Co., Inc., 836 F.2d 1104, 1111 (8th Cir. 1988).

I am *recommending* this sanction, rather than ordering it, because such a negative inference instruction is a comment by the court upon a party's failure to produce materials. In my view, the final word upon such instructions should rest with the judge who will try the case for several reasons. First, Judge Blackburn will be in the best position during trial to determine the effects that resulted upon either party as a result of plaintiff's failure to preserve and produce the subject materials. Second, between now and the date of trial, plaintiff may locate and produce materials, though the production clearly would be untimely. And, third, Judge Blackburn will be in the best position to determine whether defendants, in particular, have suffered any prejudice to their ability to try their case as a result of plaintiff's failure to produce. Whether the giving of a negative inference instruction will be warranted is ultimately a decision to be made by Judge Blackburn, in light of this recommendation as well as in light of the evidence that has been adduced at trial.

Of course, any negative inference instruction that Judge Blackburn elects, in his discretion, to deliver to the jury may be re-worded by him in such a way as to direct the attention of the jury to plaintiff's failure to provide the discovery that is the subject of this order. He may choose to instruct the jury, for example, that "if you conclude that

plaintiff has failed to produce evidence which is or was under his control, and reasonably available to him and not reasonably available to defendants, then you may infer that the evidence was unfavorable to the plaintiff." The wording of any instruction will be his call.

## CONCLUSION

It is therefore ORDERED as follows:

1. The Motion of Defendants to Compel Production of Documents and for Sanctions [filed June 17, 2005], and Defendants' Motion for Sanctions for Failure to Comply with Court Order Regarding Discovery [Doc. 64, filed July 18, 2005] are GRANTED as described above.

2. Plaintiffs' Motion to Compel Response to Plaintiff's First Set of Written Interrogatories and Requests for Production of documents, Records and Things [Doc. 58, filed June 28, 2005] is DENIED.

Dated at Denver, Colorado, this day of: October 14, 2005

BY THE COURT:

s/ O. Edward Schlatter

_____
                                O. Edward Schlatter
                                United States Magistrate Judge